# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION
## 255 EAST TEMPLE STREET
## LOS ANGELES, CA 90012

Vincent White, In Pro Per
2603 West Oldfield Street
Lancaster, CA 93536
Email: vinelv@qnet.com
Phone Number: 661-212-8987



VINCENT WHITE, et.al., )
Plaintiffs )
)
)
v )
)
EASTSIDE UNION SCHOOL )
DISTRICT )
)
)
)
)
)
Defendant )
)

**CV12 04622 RGK (JCx)**

Case #:

May 17, 2012

**Civil Complaint Pursuant To Title VII Of Civil Rights Act**

**Jury Trial Demanded**

## Jurisdiction

1. Jurisdiction is conferred on this court pursuant to 42 U.S.C. § 2000e-5. The jurisdiction of this Court is predicated upon 28 U.S.C. Section 1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction



RECEIVED
CLERK, U.S. DISTRICT COURT

MAY 2 2 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1

pursuant to 28 U.S.C. Sections 2201 and 2202 relating to declaratory judgments.

## **Parties**

2. Plaintiff: Vincent White
   Address: 2603 West Oldfield Street, Lancaster, CA 93536

3. Defendant: Eastside Union School District (ESD)
   Address: 450006 North 30th Street East, Lancaster, CA 93535

   Mrs. Peggy Foster is President of the ESD Board.

   Mrs. Janette T. Crawford is Vice President of the ESD Board Of Education.

   Mrs. Martha D. Johnson is Member of the ESD Board Of Board Of Education.

   Dr. Mark Marshall, Director of Student Services, Special Education, Alternative Education. Currently, Dr. Marshall is Interim Superintendent of ESD.

   Mr. David Howard is the Director of Human Resources.

4. This action is brought pursuant to: Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq.,* the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A; 42 U.S.C. Section 1988 for employment discrimination based on race, color, religion, sex or national origin.

5. Venue is invoked pursuant to 28 U.S.C. s 1391(b) where Plaintiff resides, and all Defendants re regularly conduct business and where all the wrongful conduct occurred.

2

**6.** Defendant's conduct is discriminatory with respect to the following (check all that apply):

(A) **X**  My race or color.
(B)     My religion.
(C) **X**  My sex (or sexual harassment).
(D)     My national origin.
(E)     My pregnancy.
(F) **X**  Other: Age

**7.** The conduct complained of in this action involves:
(A)  Failure to employ.
(B)**X** Termination of employment.
(C)  Failure to promote.
(D)  Unequal terms and conditions of employment.
(E)  Reduction in wages.
(F)**X** Retaliation.
(G)  Other acts as specified below:

### Facts

**8.** *Set forth the facts of your case which substantiate your claims. List the events in the order they happened, naming defendants involved, dates and places.*

***Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint.*** *(You may use additional sheets as necessary).*

### Introduction

**9.** According to their website, Defendant Eastside Union School District (ESD) is:

3

*...one of the Antelope Valley's oldest school districts ... The district currently has three elementary schools and one middle school. Eastside School has K-6 grades, and Tierra Bonita has K-6 grades and Columbia has K-5 grades. Cole Middle School has Grades 6-8. With growth comes change, and change sparks new ideas for our future... Our goal is to establish cohesiveness between our educational team, our students and the surrounding community providing our students with the very best educational opportunity possible.*

## **Procedural History**

**10.** Prior to the 2010 – 2011 school year, Plaintiff received a telephone call from Mr. Howard, Director of Human Resources and asked Plaintiff if he wanted to be removed from the list to substitute for the District. Howard stated that Plaintiff was not substituting enough. Plaintiff declined, there was a silence on the phone, and Howard said "Thank you Mr. White" and hung up. Plaintiff recalls Howard doing this during the 2009 – 2010 as well.

**11.** On 27 Oct 2010, Mr. Howard, called Plaintiff to inform him of a negative evaluation form filled out by a teacher. A couple of weeks later, Howard called again to say that Plaintiff received another negative evaluation from another teacher. Later, Howard called back again and verbally informed Complainant that he was being removed from his position.

**12.** On 3 Nov 2010, Complainant sent an email to Mr. Howard informing him that he was going to file an informal complaint against ESD in attempt to resolve the issue. That same day, Howard informed via email to Complainant that the reason for

dismissal was due to job performance. On 3 Nov 2011, Complainant hand carried an informal complaint. On 30 Dec 2010, Dr. Mark Marshall, Director - Student Services & Special Education Division, called Plaintiff in an attempt to resolve the issue. On 5 Jan 20II, Dr. Marshall informed Complainant via email that the issue was resolved pending a meeting with Roberto Villa, Superintendent.

13. Later, Complainant was reinstated as a substitute teacher. On 9 Mar 2011, Dr. Marshall emailed Complainant to request a meeting over a teacher evaluation prepared by Ms Shropshire, who is a 5th grade teacher at Eastside Elementary. On 13 Apr 2011, Dr. Marshall met with Plaintiff and addressed the concerns regarding Ms Shropshire. Dr. Marshall spoke with Plaintiff via telephone and asked additional questions. On 30 April 2011, Plaintiff received a letter from Dr. Marshall saying that Plaintiff was removed from his position.

14. On 2 May 2011, Plaintiff sent an appeal to the California Department of Education (CDOE), located in Sacramento, CA. After not hearing from CDOE, Plaintiff filed a complaint on 25 July 2011 with the Office Of Civil Rights (OCR). On 30 July 2011, OCR stated that they were unable to investigate and transferred the case to EEOC, located in Los Angeles, Ca. On 3 April 2012, Plaintiff received a right-to-sue notice. (**Attachment #1**).

15. Plaintiff has a time limit in which to file a complaint according to *Issa v Comp USA* 54 F.3d 1174 (10th Cir. 2003)

> *Under 42 U.S.C. § 2000e-5(f)(1), plaintiff had "ninety days in which to file suit after receipt of*

> [the] right-to-sue letter." *Witt v. Roadway
> Express*, 136 F.3d 1424, 1429 (10th Cir.1998)
> (holding that "[t]he ninety-day limit begins to run
> on the date the complainant actually receives the
> EEOC right-to-sue notice").

## FIRST CAUSE OF ACTION

## ESD Violation of Title VII's Prohibition Against Employment Discrimination -- Disparate Treatment

**16.** The *McDonnell Douglas* test can be adjusted according to the case presented as stated by *Morris v Indianapolis Public Schools*, 972 F.2d 352, (7th Cir. 1992):

> *The McDonnell Douglas test most accurately applies
> to "hiring" discrimination cases involving alleged
> racial prejudice. The Supreme Court recognized that
> the definition of the prima facie case elements and
> the allocation of burden of production should be
> adapted to differing situations which may arise in
> Title VII cases. McDonnell Douglas, supra, 411 U.S.
> at 802, n. 14, 93 S.Ct. at 1824, n. 14, 36 L.Ed.2d
> at 677-78, n. 13.5*

## Fact #1: Similarly Situated Individuals Were Treated Differently From Plaintiff

> *First, plaintiff must show that (1) he is a member
> of a protected class; (2) he was qualified for the
> position sought; (3) he suffered an adverse
> employment action; and (4) similarly situated
> individuals outside his protected class were
> treated more favorably. Fonseca v Sysco Food
> Services of Arizona, Inc.,* 374 F.3d 840, 847 (9th
> Cir. 2004)

**17.** Utilizing *Fonesca*, Plaintiff is an African-American who was qualified for the position (prior to being hired in 2002,

Plaintiff was already a substitute teacher for 3 other school districts); Plaintiff suffered an adverse action by being removed from his position; Plaintiff alleges that white substitute teachers who received negative evaluations from 2002 until present were not removed from their positions in comparison to minority substitute teachers. No analysis was conducted of the evaluations to see if Plaintiff's conduct in comparison to white substitute teachers were worse. Additionally, Howard or Marshall never mentioned any positive evaluations Complainant received.

18. Prior to being removed, Plaintiff noticed that there weren't a whole lot of minority substitutes anymore. He noticed that there were additional white substitute teachers. Marcel X (African-American), Aaron Hamilton (African-American) and Ian Bramer (Hispanic) all suffered an adverse action from ESD and are no longer working for the district. The goal is to get rid of minority substitute teachers:

> *Decision-makers, of course, may act with discriminatory intention when they decide to use criteria that work to the disadvantage of members of protected groups. Proof of disparate impact, then, can contribute to a showing of disparate treatment. Washington v Davis,* 426 US 229,242, 48 L Ed 2d597,96 S Ct 2040 (1976)

**Fact #2 - Plaintiff Met The Other Standard For Other Prima Facie Cases**

19. There are three prima facie cases that could apply in Plaintiff's case:

*In individual claims of disparate treatment …to prove intent, the plaintiff must show that: 1) he belongs to a racial minority, 2) he applied for a job for which he was qualified, 3) he was rejected, and 4) the position thereafter remained open. The McDonnell Douglas Court added two (2) other components to the structure of a Title VII action.*

*If the plaintiff establishes his prima facie case, then the defendant has the burden to articulate some legitimate, nondiscriminatory reason for the employee's rejection. At this point, the burden of production shifts back to the plaintiff to show that the defendant's stated reason for the plaintiff's rejection was in fact pretextual. Morris v Indianapolis Public Schools, 972 F.2d 352, (7th Cir. 1992)*

**20.** The second prima facie case is outlined in *Aljadir v Substitute Teacher Service* (#02-464-GMS) USDC District Of Delaware (2002):

*A prima facie discrimination case under Title VII requires the plaintiff to show that: (1) he is a member of a protected class; (2) he is qualified for the former position; (3) he suffered an adverse employment action despite being qualified; and (4) the action occurred under circumstances giving rise to an inference of unlawful discrimination, such as when non-members of the protected class are treated more favorably than the plaintiff. Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); Miller v. Delaware Dep't of Probation & Parole, 158 F. Supp. 2d 406, 410-11 (D. Del. 2001).*

*The ultimate issue in cases alleging racial discrimination in discharge is whether there has been disparate treatment between members of a racial minority group and others not of that group.*

> *Pouncy v. Prudential Insurance Co. of America, 668 F.2d 795, 802 (5th Cir.1982)*

21. The third prima facie case is outlined in *Aljadir v Substitute Teacher Service* (#02-464-GMS) USDC District Of Delaware (2002):

> *In a discharge case, the plaintiff must show that she belongs to a protected class, that she was qualified for the position, that she was discharged, and that the discharge occurred in circumstances giving rise to an inference of racial discrimination. Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464 (2d Cir.1989). Put another way, a plaintiff alleging a discriminatory firing need only show that he/she was fired from a job for which he/she was qualified while others not in the protected class were treated more favorably. Bellissimo v. Westinghouse Electric Corp., 764 F.2d 175, 179-180 (3rd. Cir.1985), cert. denied 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986).*

> *The plaintiff in the present case must show by a preponderance of the evidence that he was fired as a substitute teacher while other "nonblack" substitute teachers were treated more favorably. The plaintiff must show that defendant acted with the intent to discriminate against him. Morris v Indianapolis Public Schools, 972 F.2d 352, (July 1992)*

## Prima Facie Cases For The Case: First & Second Prong

22. To satisfy the first prong, Plaintiff belongs to a racial minority and a member of a protected class (African-American male). To satisfy the second prong, Plaintiff is qualified for the position. Although Plaintiff has a bachelor's degree in accounting, he has been a substitute teacher for ESD since Aug

2002). Additionally, Plaintiff is a substitute teacher in three other school districts: Westside Union School District (2002); Lancaster School District (1996 - 2000 and 2000 - current) and Palmdale School District (1997).

**23.** It is unique that Plaintiff is a substitute for three other school districts because one can compare school districts. Plaintiff has been employed at the other school districts as long as he has been employed at the Defendant's school site. It is extremely odd that Plaintiff would perform unsatisfactorily in one school district but perform satisfactorily in all the other school districts. If Plaintiff's work performance was bad, why would Defendant would rehire him?

**24.** Throughout fifteen years, Plaintiff has been requested many times throughout all four school districts. Mr. Lexy Conte, Plaintiff's boss and former principal, attested to Plaintiff's experience **(Attachment #2)**:

> *Mr. White has faithfully served as a substitute teacher for the Lancaster School District since October 2000. Mr. White is one of our most frequently used substitute teachers... Mr. White substitutes in all grade levels, departments, and settings.*

Additionally, Plaintiff has also received reference letters from teachers attesting to his experience **(Attachment #3)**, showing a consistency shown in 2003 and 2012:

> **2003**: 18 Mar 2003 - Mark Gross, Principal, Mariposa School (formerly principal at Joshua School): Lancaster School District (LSD):*Vincent has a*

10

*positive style and gentle demeanor with students....*
*He is adept at writing and implementing lesson*
*plans and provides students with a structured and*
*organized instructional program.*

7 Mar 2003 Sandra Lyon, former Principal, Amargosa
Creek Middle School, Lancaster School District: *Mr*
*White has been substitute teaching regularly at*
*Amargosa Creek Middle School since the beginning of*
*the 2002 - 3003 (sic) school year and has assisted*
*us by taking two lengthy substitute assignments...*
*Mr. White has willing done all that is asked of*
*him, preparing lessons as needed, grading papers...*
*He has communicated effectively with parents...*

**2012:** 8 May 2012 Mr. Newman, Teacher, (10 years) &
Administrative Intern, LSD:  *As an administrative*
*intern, I often am in need of a substitute teacher,*
*and Vincent White is always on the top of my list.*
*I know that I can count on him to follow the lesson*
*plans as well as to treat my students with respect,*
*kindness, and care.*

9 Apr 2012 - Mr. Wood, Teacher (14 years), LSD *Mr.*
*White is a well-versed individual when it comes to*
*teaching multiple classes and various subjects...*
*However, there are times when you have an*
*unexpected and intolerable illness that prohibits*
*you from any classroom preparation. It is with*
*those unplanned moments, where an individual can*
*call for Mr. White and not worry about what is*
*happening in your class. I feel comfortable*
*knowing that lessons will be completed and*
*students are learning.*

25 April 2012 - Mr. Brotze Teacher 30 years, LSD:
*I consider him an invaluable substitute, a man*
*with integrity and a connection with children... I*

11

> *have spoken to him at various times about getting his credential.*
>
> Undated - Ms Luna,   *...students beg me to have Mr. White return whenever I need a substitute teacher. Whenever I return to the classroom... I can be assured that my classroom is orderly and students are happy.*

### Prima Facie Cases For The Case: Third Prong

**25.** To satisfy the third prong, Plaintiff suffered an adverse employment action by being removed from his position. Plaintiff satisfies the fourth prong by alleging that either the position remained open or Caucasian substitute teachers received favorable treatment.

**26.** Plaintiff does not have to prove at the prima facie stage that Defendant's reason for his removal was due to his job performance:

> *To establish her prima facie case, Gill was not required to disprove the reason given for her discharge. See Davenport v. Riverview Gardens Sch. Dist.,* 30 F.3d 940, 943 (8th Cir.1994). *At the prima facie stage, Gill only needed to prove "that '[she] was doing [her] job well enough to rule out the possibility that [she] was fired for inadequate job performance.' " Crimm v. Missouri Pac. R. Co.,* 750 F.2d at 711 750 F.2d 703, 711 (8th Cir.1984) (citation omitted). See (quoting *Gill v Reorganized School District R-6, Festus Missouri* 32 F.3d 376 (8th Cir. 1994)

Plaintiff has provided the following proof that he was performing satisfactorily:

### Fact #2: Plaintiff Was Not Criticized In Prior Years

12

27.   There is a significant difference between hiring and termination stages:

> Defendant argues that plaintiff fails to establish prima facie case discrimination because plaintiff was not qualified… (pg. 10)
>
> At the initial **hiring** stage, proof of qualification typically requires that the plaintiff show (s)he had the skills, abilities, experience and training required by the employer of all applicants for the job.
>
> In **termination** cases, however, proof of qualification requires more. To show that (s)he was qualified to remain employed, and to eliminate the most common nondiscriminatory reason for termination, the plaintiff must show that 'at the time of the adverse employment action (s)he was performing at a level that met her (his) employer's legitimate job expectations.' Brinkley v Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999)
>
> While prior work history is not probative at the second and third stages of the McDonnell Douglas test, common sense dictates that it is relevant at the prima facie stage for determining whether an employee has at least the minimum attributes needed to perform the position. **Employers regularly consider a potential employee's prior work experience to decide whether that individual is qualified for a position.** (emphasis is Plaintiff's)

28.   From Aug 2002 until Oct 2010, Complainant was **never** disciplined due to performance by ESD:

> Keller points to the absence of any official criticism of his performance. In Seimper (v Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995)), we concluded that a genuine issue existed as to

13

> *pretext because of plaintiff's own testimony of*
> *satisfactory performance combined with evidence*
> *that he was not criticized while still employed*
> Ibid., 721-32. Quoted in *Keller v Orix Credit*
> *Alliance, Inc., #955289* (3rd Cir. 1995)

**29.** However, Mr. Howard came up with a nondiscriminatory reason for the lack of criticism. In a telephone conversation, Howard stated that he initiated the evaluation form **(Attachment #4)** when he became Human Resources Director in 2007. According to the minutes of the school district, Howard served as Acting Director of Human Resources from Jan – June 2007. On 25 June 2007 (2007 – 2008 school year), Howard was appointed as Director. However, two things are in dispute. Upon being employed by ESD, Plaintiff was given *Substitute Teacher Handbook 2001-2002 School Year* which states:

> *A simple form of evaluating the Substitute Teacher*
> *has been designed. Each principal has the*
> *responsibility of supporting and helping Substitute*
> *Teachers improve the quality of instructional*
> *programs and teaching techniques.*

**30.** Howard is incorrect. A substitute teacher evaluation form has been in existence since 2001 – 2002 before Howard took over in 2007. In Complainant's eight year run as substitute teacher for the ESD, **no** principal has ever supported or helped Plaintiff other than disciplining students that were sent out. Plaintiff is dumbfounded as to how he was performing well in his position for eight years and then all of a sudden, his performance declined so dramatically.

14

**31.** Howard told Plaintiff about the evaluation form that Ms Finks filled out. Plaintiff expressed surprise of her negative evaluation because he substituted for her on 23 Feb 2010 (2009 – 2010) and received nothing negative from her. However, Howard did say that Plaintiff did receive a negative evaluation from her. Plaintiff was in her class on 22 Sep 2010 (2009 – 2010 school year). It is unknown why Howard would wait until the following school year (2010 – 2011 school year) to inform Plaintiff. During Howard's tenure over Human Resources from Jan 2007 until Sep 2010, Howard never informed Plaintiff about his performance. Plaintiff alleges that Howard was trying to gather enough negative evaluations in order to remove him.

**32.** Additionally, Plaintiff had other jobs for ESD, but the Defendant never showed him the evaluations from the other teachers that Plaintiff worked for:

| 2007 – 2008 | School | Teacher | Job # |
|---|---|---|---|
| 2/14/2008 | Cole | Marker | 6431 |
| 2/15/2008 | Cole | Marker | 6431 |
| 2/16/2008 | Cole | Marker | 6431 |
| 2/22/2008 | Cole | Peters | ???? |
| 3/06/2008 | Cole | Roxas* | 1135 |
| 4/02/2008 | Cole | Smith | 1263 |
| 5/05/2008 | Cole | McDonald | 1539 |
| 5/07/2008 | Cole | Peters | 1491 |
| 5/08/2008 | Cole | Peters | 1491 |
| 5/09/2008 | Cole | Peters | 1491 |
| 5/23/2008 | Eastside Elemen | DelRosario* | ???? |
| 8/20/2008 | Eastside Elemen | Gutierrez | 1845 |
| 8/21/2008 | Cole | Colcord | 1856 |
| 8/29/2008 | Cole | Patel | 1847 |
| 9/02/2008 | Cole | Patel | 1847 |
| 9/04/2008 | Eastside Elemen | Wilson | 1914 |
| 10/16/2008 | Cole | Pedersen | 2075 |
| 10/23/2008 | Cole | Smith | 1825 |
| 10/29/2008 | Cole | Loughridge | 2204 |
| 11/12/2008 | Cole | Sanchez | 2315 |
| 11/20/2008 | Eastside Element | Fox* | 12323 |
| 11/24/2008 | Eastside Element | Lisa ??? | 2372 |
| 11/25/2008 | Eastside Element | Lisa ??? | 2372 |

15

| 12/01/2008 | Eastside Element Gonzalez | | 2402 |
| 12/02/2008 | Eastside Element Gonzalez | | 2402 |
| 12/03/2008 | Eastside Element Gonzalez | | 2402 |
| 12/04/2008 | Eastside Element Gonzalez | | 2402 |
| 12/05/2008 | Eastside Element Gonzalez | | 2402 |
| 12/11/2008 | Cole | Pedersen | 2417 |
| 12/15/2008 | Cole | Pedersen | 2489 |

- Requested by teacher

| 2008 – 2009 | School | Teacher | Job # |
|---|---|---|---|
| 1/20/2009 | Tierra Bonita South* | Evenson | 2550 |
| 1/21/2009 | Tierra Bonita South | Evenson | 2550 |
| 1/22/2009 | Tierra Bonita South | Evenson | 2550 |
| 1/23/2009 | Tierra Bonita South | Evenson | 2550 |
| 2/10/2009 | Cole | Roxas | 2667 |
| 2/18/2009 | Cole | D. Pederson | 2636 |
| 6/2/2009 | Cole | Roxas | 3213 |
| 6/3/2009 | Cole | Patel | 3225 |
| 6/19/2009 | Tierra Bonita | Tourles (?) | 3245 |
| 6/22/2009 | Tierra Bonita | Okenua | ???? |

*Requested By Ms Marquez, Secretary

| 2009–2010 | School | Teacher | Job # |
|---|---|---|---|
| 8/19/2009 | Cole | Banner | 43 |
| 8/20/2009 | Tierra Bonita | Wolf | 49 |
| 9/08/2009 | Eastside Elementary | Humphrey | 139 |
| 9/16/2009 | Cole | Cole | 163 |
| 9/26/2009 | Eastside Elementary | Miller | 212 |
| 10/02/2009 | Cole | Comon (?) | 257 |
| 10/06/2009 | Columbia Elementary | Fife | 271 |
| 10/22/2009 | Cole | ???? | 384 |
| 10/27/2009 | Cole | Banner | 434 |
| 11/3–11/6 | Cole | D. Brussow | 465 |
| 2/16–2/17 | Tierra Bonita | Scheider | 953 |
| 2/23/2010 | Cole | Finks | 1061 |
| 5/11/2010 | Cole | Humphrey | 1454 |
| 6/8/2010 | Cole | Cole | 1619 |

| 2010-2011 | School | Teacher | Job # |
|---|---|---|---|
| 8/30/2010 | Tierra Bonita | Fletcher | 1745 |
| 9/02/2010 | Cole | Loughridge | 1763 |
| 9/07/2010 | Cole | Blair | 1771 |
| 9/16/2010 | Cole | Supplementary | 1861 |
| 9/22/2010 | Cole | Finks | 1891 |
| 10/5–10/7 | Eastside Elementary | Bryant | 1675 |
| 10/22/2010 | Eastside Elementary | Guiterrez | 2111 |
| 02/03/2011 | Eastside Elementary | Gonzalez | 2668 |
| 03/07/2011 | Eastside Elementary | Shropshire | 2919 |

_____

_____

**33.** In the 23 Mar 2012 letter from EEOC:

> *Respondent states that in January 2007, they initiated a substitute teacher evaluation form. Respondent states that between October 2009 and October 2010, you received evaluations from teachers you substituted for and that deficiencies noted in the evaluations were discussed with you.*

**34.** Plaintiff denies having anybody discuss with him about evaluations between Oct 2009 and September 2010. The only time that Howard called Plaintiff about his performance was in October 2010.

**35.** What about all the other classes that Plaintiff was in? Was Plaintiff receiving negative evaluations from all the teachers? Recall that Plaintiff substituted for Ms Finks on 22 Sep 2010 (2010 – 2011 school year). Howard never told Plaintiff that Ms Finks wrote a negative evaluation of Plaintiff on 23 Feb 2010 (2009 – 2010) school year. If Howard had a conversation with Plaintiff, why was he allowed to substitute for Ms Finks' class again?

### Fact #3 – No Accomplishments Were Stated By Defendant

**36.** In 2006 – 2007 school year, Cole Middle School (CMS) was in a crisis as stated by Board of Trustees board meeting:

> May 22, 2006 - *Chuck Pederson, Eastside Teachers Association (ETA) President, stated there had been much rhetoric over the last few week at Cole Middle School (CMS) ... He said it was the most turbulent school year he had seen. It was the first year he had seen administration changes midyear.*

17

> *Mr. Pederson stated that a small percentage of Cole*
> *staff would like to see Mr. Smith [Smith was the*
> *principal at the time] continue as Principal for*
> *2006/07 ... Fire alarms were being set off almost*
> *daily by students ... Eighteen new teachers had*
> *been hired for the 2005/06 school year and new*
> *teachers needed guidance. These teachers were not*
> *comfortable coming forward for assistance or saying*
> *anything about the administration. Pg. 3*

**37.** Recall that Plaintiff is a substitute teacher for three other school districts. Out of all the schools, CMS was the worst school that Plaintiff has been. CMS was the only school to have a deputy on campus. The reason why things were bad at CMS is due to the Defendant not having a school site for children being disruptive at the schools. The students would simply be suspended and sent back to the classrooms. Much later a community day school separate from the campus was built.

**38.** Lori Gacho (who is over the SubFinder system) would call Plaintiff on many occasions to substitute at CMS. Many substitutes refused to go. However, Plaintiff went on several occasions. One day, Plaintiff talked to Gacho and wanted to resign due to the stress. Ms Gacho recommended that Plaintiff talk to Dr. Riccio, who was the Superintendent at the time.

**39.** Due to Plaintiff's efforts, Riccio initiated a policy which states that each time a substitute would come in and have no lesson plans, the substitute would be paid at a higher rate. Normally, a substitute would carry his/her timesheet to each school. However, CMS was the only school to require timesheets to stay at CMS due to the new policy.

**40.** Over time Complainant has had to deal with issues that he has not been trained for. After Dr. Riccio was removed from his position, Plaintiff wrote to Mr. Ross, who was principal at the time about the conditions at CMS (**Attachment #5)**

### Fact #4 – Plaintiff's Performance Was Satisfactory

> *To establish her prima facie case, Gill was not required to disprove the reason given for her discharge. See Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 943 (8th Cir.1994). At the prima facie stage, Gill only needed to prove "that '[she] was doing [her] job well enough to rule out the possibility that [she] was fired for inadequate job performance.' " Crimm v. Missouri Pac. R. Co., 750 F.2d 703 at 711 (8th Cir. 1984) (citation omitted). See quoting Gill v Reorganized School District R-6, Festus Missouri 32 F.3d 376 (8th Cir. 1994)*

> *A court must examine Plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff quoting Clinc v Catholic Diocese of Toledo, 206 F.3d at 660, 61 (6th Cir. 2000). The Sixth Circuit warns courts to not 'conflate the distinct stages of the McDonnell test.' Cicero v Borg Warner Automotive Inc., #00-1022, (6th Cir 2002)*

> For example, the 6th Circuit further stated that management had:

> *...now protested unhappiness with Cicero's job performance, but never gave Cicero any warning nor did they 'contemporaneously document' any of their complaints. Ibid.*

**41.** Defendant states that they discussed Plaintiff's job performance with him during the 2009 - 2010 and 2010 - 2011 school year. Plaintiff denies that this took place. However, if Plaintiff's performance was deficient, why did he receive a letter from ESD: stating the following:

> *We are making this offer to you based upon the district's continuing need for substitute teachers as demonstrated in prior years as well as your* ***excellent work history*** *and record of availability.* **(Attachments #6)** (Emphasis is Plaintiff)

## Fact #5 -  Howard & Marshall Set Up Complainant To Fail

> *Other circuits have recognized that pretext can be proven by showing that a supervisor set an employee up to fail. Watson v Norton* #991450 (10 Circuit 1999)(quoting *Serrano v DFE Puerto Rico Inc.* 109 F. 3d 23, 26 (1st Cir. 1997):

**42.** Howard knew of a negative evaluation in a prior school year, but never informed Plaintiff about it. Plaintiff alleges that Howard wanted to get rid of Complainant but did not have enough negative evaluations. The school year just started in August, so three negative evaluations should not have gotten Complainant fired from his job. Again, there was no in-depth investigation of Plaintiff's eight-year history with ESD. Marshall reinstated Plaintiff just so they could build their case stronger in trying to dismiss Plaintiff.

## Prima Facie Cases For The Case: Fourth Prong

20

**43.** Some prima facie cases have a fourth prong that states that a plaintiff has to prove that the replacement was by someone of another race. That view is incorrect as stated by *Davenport v Riverview Gardens School District* 30 F.3d 940 (8th Cir. 1994):

> *As to the fourth element, the district court erroneously believed that plaintiff was required to prove that he was replaced by someone outside his protected class. Slip op. at 5, 9 (Jan. 14, 1993). While proof of replacement by a person outside the protected class will satisfy the fourth element, it is now well-settled that such proof is not required. Walker v. St. Anthony's Medical Center,881 F.2d 554, 558 (8th Cir.1989) (no such per se requirement has traditionally been imposed in Title VII cases). "Rather, Title VII has been interpreted to require only that, in addition to the first three elements of a prima facie case, the plaintiff demonstrate that his or her discharge occurred in `circumstances which allow the court to infer unlawful discrimination.'" Id. (citing Craik v. Minnesota State Univ. Bd.,731 F.2d 465, 469 (8th Cir.1984)).*

### SECOND CAUSE OF ACTION

### ESD Violation of Title VII's Prohibition Against Employment Discrimination -- Disparate Impact

> *In order to establish a prima facie case of discrimination under a disparate impact analysis, complainant must show that the challenged practice or policy had a disproportionate impact on members of her protected class.*

> *Specifically, complainant must: (1) identify the specific practice or policy challenged; (2) show a*

*statistical disparity; and (3) show that the disparity is linked to the challenged policy or practice. Watson v. Fort Worth Bank and Trust, 487 U.S. 977 (1988). The burden is on the complainant to show that "the facially neutral standard in question affects those individuals [within the protected group] in a significantly discriminatory pattern." Dothard v. Rawlinson, 433 U.S. 321, 329 (1977); see also Gaines v. Department of the Navy, EEOC Petition No. 03990119 (August 31, 2000).*

*To establish unlawful disparate impact, the plaintiff must point to employment practices that are based upon facially neutral criteria but that in fact fall more harshly on one group and cannot be justified by business necessity; no proof of discrimination Y is necessary. Teamsters v United States, 97 s.et. 1843, 1845, nt.15.*

## Defendant's Reason For 1st Removal

**44.** After completing a job at a particular school, a teacher is supposed to fill out an evaluation form. There are 5 categories to be ranked (excellent, good, fair and poor). If the rankings are fair or poor, the teacher is to write comments. The rankings used are: *1. Lesson Plans Followed; 2. Materials Left In Good Order; 3. Classroom Left In Good Order; 4. All Instructions Followed; 5. Student Feedback.* The form also asks if the teacher would recommend the substitute for another assignment. At the bottom of the form is the teacher's signature and date along with principal and Director of Human Resource initials and date.

**45.** Howard called to inform Plaintiff of a negative evaluation given by Ms Finks, a teacher at Cole Middle School (CMS). Plaintiff substituted for Finks on 22 Sep 2010. According to

22

Howard, Finks was not pleased with Complainant's performance, stating that the class was very noisy. Ms Finks periodically returned to her class during the day. Finks also stated that there was a knife on her desk and assumed that it was the Plaintiff. Plaintiff explained that he left a note for Ms Finks indicating that he was unable to control classroom noise. Howard stated that Finks attached the note to her evaluation. Complainant was informed by one of the students that the class was like this before, but the teacher recently began to address it. Howard further stated that the administration at CMS felt that things were not working with Complainant, so Howard made the decision to remove Complainant from this school site.

46. Approximately a week and a half later, Mr. Howard called and stated that Ms Bryant from Eastside Elementary School (5, 6, & 7 Oct 2010) had given Complainant a negative evaluation, stating that lesson plans were not followed; classroom was not left in good order; inappropriate comments were made to the children; and children were allowed to stand in their chairs. This week, Howard called to say that Ms Guiterrez (Complainant substituted for her on 22 Oct 2010) called to say that she wrote a negative evaluation stating that lesson plans were not followed and Complainant made inappropriate comments. Howard stated that due to all the negative evaluations, he decided to remove Complainant from his position.

### Plaintiff's Response To 1st Removal

48. Regarding Ms Finks, Plaintiff told Howard that it was unfair to attempt to control classes that were already out of control

23

prior to his arrival. Again students told Plaintiff that the class was always out of control. A teacher informed Complainant that Mr. Pollack, principal at CMS, instituted a new policy that frowned upon sending a student to the office for behavior issues. This put pressure on Plaintiff because Finks did not leave any notes on what to do with behavioral issues.

**49.** Regarding Ms Bryant, Plaintiff had worked for Ms Bryant for three days. Howard never mentioned what inappropriate comments were made. Due to bad weather, children played a game in which they were seated on their desks. No one was standing on their chairs.  Plaintiff left detailed notes explaining what took place. Additionally, some of the lesson plans were not followed because of an assembly that Ms Bryant did not note in her plans. Howard stated that Plaintiff could still work for Eastside Elementary, but to not take any more jobs from Ms Bryant.

**50.** Regarding Ms Guiterrez, Howard stated that lesson plans were not followed, but Complainant talked to Guiterrez via cell phone, and Guiterrez stated that Complainant did a very good job with her class, things were in order, and that the children liked Plaintiff. Howard stated that Guiterrez became "scared" that Complainant would call her cell phone. Complainant stated that Guiterrez left her phone number in the lesson plans **(Attachment #7)** In the event that lesson plans were not followed, Guiterrez stated that to *have fun, run the class how you fill* (sic) *most comfortable!!!*. However, the lesson plans were followed. Additionally, Plaintiff made copies of his notes to Guiterrez **(Attachments #8)**.

## Defendant's Reason For 2nd Removal

51. After being reinstated, Complainant received a negative evaluation from Ms Shropshire from Eastside Elementary School (7 Mar 2011). According to the response dated 23 Mar 2012 sent to the EEOC, Defendant stated:

> *Respondent states that after substituting for Letitia Shropshire on March 7, 2011, Mrs. Shropshire reported to Dr. Marshall that you did not follow her lesson plans, some of the blinds were broken, that you allowed students to throw a ball, songs were played on the radio with profane language, and most importantly you made inappropriate comments to the the students. Respondent states that Dr. Marshall reviewed all the available information and decided to end the relationships with you as the problems were similar to previous incidents.*

## Plaintiff's Response To 2nd Removal

52. Regarding Ms Shropshire, Mr. Marshall never produced any statements written by the students about inappropriate comments made. Shropshire states that lesson plans were not followed, but did not attach Plaintiff's notes as to what was not covered and why. For example, in her notes, Plaintiff believes that Shropshire wanted the children to play outdoors. However, the weather was poor that day.

53. Students were not standing on their desks. They were sitting on their desks to play a game indoors due to inclement weather outdoors. The game was called "Silent Speedball" in which a small ball is tossed back and forth.   The curtains were not damaged. They were already in disrepair. During lunchtime (hours before the

25

game indoors), Plaintiff wanted to close the curtains~ but the curtains (made out of soft fabric) were too badly damaged to close. Before attempting to close the curtains, Plaintiff had to remove several books that were lying against the curtains.

**Using An Evaluation Form Improperly To Remove Minority Substitutes Creates Disparate Impact**

54.   Plaintiff alleges using the evaluation form improperly creates a disparate impact upon minority substitute teachers who are removed from their positions at a higher rate in comparison to white substitute teachers:

> (t)he critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed Oncale v Sundowner Offihore Services, Inc. (1998) 523 U.S. 75, 80-81 (quoting Singleton v. U.S. Gypsum Co. (2006). Cal.AppAth)No. B184623.

55.   Additionally, Plaintiff alleges that white substitutes have exhibited egregious behavior equal to or more than Plaintiff's behavior, but have not been disciplined or fired. A determination was used to remove Plaintiff from his position based on a teacher evaluation form. Looking at the form, it is very subjective, meaning the opinions are based solely on the teacher. For example, if a teacher states that a substitute teacher used inappropriate comments, then those comments allegedly made should be listed on the evaluation form to allow the substitute teacher to respond. An inappropriate comment to someone else might not be appropriate to others.

26

**56.** Additionally, by stating that lesson plans were not followed, the teacher should list down exactly what was not followed in order for the substitute to respond. A teacher should staple the substitute teacher's notes to the evaluation so the reviewer can attempt to see if there was any reason to not follow the plans.

**57.** For example, Plaintiff recalls an incident in which lesson plans were not followed due to a "code blue" (lockdown of school campus) This lockdown prevented another period from coming into the class, which meant that lesson plans were not followed. Another time a fire alarm pulled by a student prevented Plaintiff from completing the teacher's lesson plans.

**58.** Assuming Howard initiated this evaluation form, did Howard initiate any written instructions on how to implement the evaluation form? How many evaluation forms can a substitute teacher receive before he/she is removed? How many evaluation forms are filled out by the same teacher who always has nothing to say positive about substitute teachers?

**59.** Additionally, the ESD does not list what is essential function of the job in order to be rated:

> *The term 'essential function' is defined as 'the fundamental job duties of the employment position the individual with a disability holds or desires ...Determining whether a particular function is essential is a factual inquiry... In making this determination, courts must give consideration to the employer's judgment as to what functions of a job are essential, including those functions contained in a written job description. Davidson v America Online, Inc., #01-4253 (10th Cir. 2003)*

27

**60.** On information and belief, the Defendant's process of evaluating minorities negatively impacts minority employees in general. This process leaves white substitute teachers that either have similar or worse evaluations than minority substitutes.

**61.** Since Howard has been over the Human Resources Department, the number of minority teachers has not grown. It is important to examine the culture of an organization to see if a discriminatory atmosphere exists:

> *[W]e recognize that proof of a discriminatory atmosphere may be relevant in proving pretext since such evidence does tend to color to the employer's decision making processes and to the influences behind the actions taken with respect to the individual plaintiff. Antol v Perry, Dept of Defense, Defense Logistics Agency #95-3254 (3rd Cir.1995)*

**62.** For example, in a dissent in *Gill v Reorganized School District R-6, Festus Missouri* 32 F.3d 376 (8th Cir. 1994), Heaney, Senior Circuit Judge stated:

> *The Festus School District enrolls a significant number of black students. During the school years 1990-91, 1991-92, and 1992-93 there were no black teachers at Festus Middle School. Deposition of John Richeson (Aug. 20, 1992), App. at 246. At the time of her removal, Gill was the only black substitute teacher. Id. at 244.*

## Statistical Evidence Shows A Disparity

as stated by

28

*The [Ninth Circuit] court explained that statistical evidence is 'unquestionably relevant' in a Title VII disparate treatment case for two reasons. Diaz v American Telephone & Telegraph, 752 F.2d at 1362 (9th Cir. 1985). First, statistical information... is helpful in establishing a prima facie case…*

*Second, a plaintiff is also entitled to use statistical evidence to show that a defendant's articulated nondiscriminatory reason for the employment decision in question is pretextual. Id. At 1363)... Subsequent to Diaz, the Ninth Circuit reaffirmed the idea than an employer's general discriminatory pattern is relevant to an individual disparate treatment case. Avila v Select Temporaries Inc. #01B00050 (Office Of The Chief Administrative Hearing Officer (May 2002):*

**63.** This is similar with the Defendant's statistics regarding the number of African-American students:

| Year | Whites | Blacks | Hispanics |
|------|--------|--------|-----------|
| 2008-2009 | 21.4% | 32.0% | 38.3% |
| 2007-2008 | 14.8% | 27.6% | 54.2% |
| 2006-2007 | 17.5% | 25.3% | 52.6% |

**Source:** *California Dept of Education*

The number of Blacks attending the Defendant's schools is a "significant number" Regarding this case, there are not enough minority teachers at the Defendant's schools:

Teachers At Eastside Union School District

| Year | WM | WF | HM | HF | BM | BF |
|------|----|----|----|----|----|----|
| 2009 – 2010 | 22 | 91 | 6 | 10 | 0 | 8 |
| 2008 – 2009 | 21 | 89 | 5 | 4 | 0 | 7 |
| 2007 – 2008 | 23 | 85 | 9 | 9 | 0 | 6 |
| 2006 – 2007 | 25 | 89 | 7 | 6 | 1 | 8 |
| 2004 – 2005 | 20 | 77 | 2 | 5 | 2 | 7 |

29

| 2002 – 2003 | 17 | 76 | 0 | 4 | 0 | 4 |
| 2001 - 2002 | 21 | 77 | 0 | 4 | 1 | 6 |
| Source: California Dept Of Education DataQuest | | | | | | |

The population of the minorities in comparison to the diversity of the staff is very poor. For example, 8% of teachers are Black while 32% of students at the ESD are Black.

**64.** Analyzing the data of teachers, minorities are lagging in comparison to white males/females. What is alarming is that the number of black males that have been zero from 2007 – 2009.  This means an "inexorable effect:"

> *An inexorable zero occurs when no members of the group alleging discrimination alleging discrimination have been hired. Thus, in our example, if no women had been hired among the 178 actual hires for this employer, then the inexorable zero of women would suggest a pattern or practice of discrimination. See also Capaci v Katz & Besthoff, Inc., 711 F.2d 647, 32 Fair Empl. Pr)961,32 Empl. Prac. Dec. (CCH) P 33769 13 Fed. R. Evid. Serv. 1815* (5th Cir. 1983)

### Census Data Shows Disparity

> *The use of census data is an appropriate method of demonstrating discrimination. Hazelwood School District v. United States, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977) (quoting Capaci v Katz & Besthoff" Inc. 711 F2d 647* (5th Cir. 1983)

**65.** All the practices and policies that the Agency failed to follow created a statistical disparity. The following census data is from the Los Angeles Almanac website and the Antelope Valley Press newspaper:

30

|  |  | African- American | | Hispanic | | White | |
|---|---|---|---|---|---|---|---|
|  |  | Lancaster | Palmdale | Lancaster | Palmdale | Lancaster | Palmdale |
| Census | 1990 | 7.43% | 6.41% | 15.12% | 21.94% | 73.00% | 66.98% |
|  | 2000 | 16.00% | 14.59% | 24.13% | 37.71% | 52.00% | 41.00% |
|  | 2010 | 19.70% | 14.10% | 38.00% | 54.40% | 34.20% | 37.39% |

**66.** The African-American population in surrounding cities has grown while Whites have been in decline. The Defendant has initiated a policy to not increase the population of minority teachers in proportion to the student population. At the same time, the Defendant removes minority substitute teachers and do not hire either of them:

> *An inclusive recruitment effort enables employers to generate the largest pool of qualified applicants and helps to ensure that minorities and women are not discriminatorily excluded from employment. Shuford v Alabama State Board of Educ.,* 897 F.Supp 1535, 1553-54 (M.D. Ala. 1995) (quoting *Duffy v Wolle* 123 F.3d 1026 (8th Cir. 1997:*

## ESD Is Not Implementing Diversity Among Its Staff (Statistical Evidence)

> *The California Department of Education supports high-quality educational programs for California's diverse student population through its educational leadership role and places great importance on cultivating a **diverse staff** that understands and promotes the intellectual, ethical, cultural, and physical growth of each student. (Source: www.cde.ca.gov)* (emphasis is Plaintiff)

In its mission statement, the Defendant states they are to:

31

*...provide a program of educational excellence within a caring and motivating environment through a team commitment, to meet the needs of an increasingly diverse and changing community.*

**67.** The Defendant creates disparate impact by failing to achieve diversity among its staff, thereby creating a lack of diversity with minority substitute teachers. When Plaintiff is a substitute teacher at ESD, the majority of the time he is the only African-American male at the schools. If the school district is lagging with teachers, it is not a far assumption to make that African-American male substitute teachers are nonexistent. Plaintiff alleges that African substitute teachers are removed at a much higher rate than white/female substitutes.

**Teachers – Eastside Union School District**

| Year | Whites | Blacks | Hispanics |
|------|--------|--------|-----------|
| 2008 – 2009 | 72.5% | 7.5% | 5.0% |
| 2007 – 2008 | 81.3% | 9.4% | 3.1% |
| 2006 – 2007 | 77.6% | 6.1% | 8.8% |
| 2005 – 2006 | 70.4% | 11.1% | 7.4% |
| 2004 – 2005 | 80.8% | 8.0% | 4.0% |
| 2002 – 2003 | 77.3% | 4.5% | 0.0 % |
| 2001 - 2002 | 84.0% | 4.0% | 0.0% |
| **Source: California Dept Of Education DataQuest** | | | |

| | African-American | | Hispanic | | White | |
|---|---|---|---|---|---|---|
| | Lancaster | Palmdale | Lancaster | Palmdale | Lancaster | Palmdale |
| Census 1990 | 7.43% | 6.41% | 15.12% | 21.94% | 73.00% | 66.98% |
| 2000 | 16.00% | 14.59% | 24.13% | 37.71% | 52.00% | 41.00% |
| 2010 | 19.70% | 14.10% | 38.00% | 54.40% | 34.20% | 24.50% |

32

**68.** Analyzing census data, Whites have been declining and minorities have been increasing. However, over 70% of teachers are white at ESD. Plaintiff alleges Defendant wants to keep ESD white while shutting out minorities as teachers and substitute teachers.

## ESD Is Not Implementing Diversity Among Its Staff (Statistical Evidence)

> *An inclusive recruitment effort enables employers to generate the largest pool of qualified applicants and helps to ensure that minorities and women are not discriminatorily excluded from employment. Shuford v Alabama State Board of Educ., 897 F.Supp 1535, 1553-54 (M.D. Ala. 1995) quoting Duffy v Wolle 123 F.3d 1026 (8th Cir. 1997)*

**69.** Defendant shows no proof of recruiting efforts to try and increase minorities. It is not a far stretch to allege that the ESD is not following its mission statement in that statistical evidence shows little or no minorities that the ESD has failed to use recruitment methods to attract minorities to their school district.

## FOURTH CAUSE OF ACTION - REPRISAL

> *Title VII prohibits discrimination against a current employee, former employee, or applicant because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII,@ 42 U.S.C. '2000(e)(3)(a). Title VII also prohibits discrimination against a current or former employee or applicant because he has opposed any practice made in unlawful practice by Title VII, 42 U.S.C. '2000e-3(a) the courts have held that an employee*

33

*is protected if he or she had a reasonable and good faith belief that the practice they opposed constituted a Title VII violation even if it turned out that the practice they opposed was not a violation of Title VII… Dee v. Colt Construction and Delivery Company, 28 F.3d 1446 (7th Cir.1994).*

Additionally, retaliation is:

*…a separate violation of Title VII. "To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to her protest,' so long as she had a reasonable good faith belief that the discrimination existed." Meeks v. Computer Assocs. Int'l., 15 F.3d 1013, 1021 (11th Cir.1994) (quoting Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir.1989)).*

*In order to establish a prima facie case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. See Farley v. Nationwide Mut. Ins., 197 F.3d 1322, 1336 (11th Cir.1999). (quoting Gupta v Florida Board of Regents 212 F.3d 571 (11th Cir. 2000):*

Proof of reprisal can be shown two ways:

*This Court, however, has consistently held that proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment,*

34

> *or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant. See Cosgrove, 9 F.3d at 1039. Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993) (quoting Gordon v New York City Board of Education, #99-9503,(2nd Cir 2000):*

**70.** Plaintiff satisfies the first prong because he participated in an activity protected by Title VII by filing an informal complaint based on discrimination on 3 Nov 2010 against the Defendant after being removed from his position. After filing the complaint, the Defendant initiated an investigation and reinstated Plaintiff on 5 Jan 2011. Plaintiff satisfied the second prong when the Defendant removed him from his position a second time on 30 April 2011. To prove a casual connection requires:

> *...a plaintiff only to demonstrate " 'that the protected activity and the adverse action were not wholly unrelated.' " Clover v. Total System Services, 176 F.3d 1346, 1354 (11th Cir.1999) (emphasis added) (quoting Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir.1985)). We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action. See Clover, 176 F.3d at 1354 (citing Goldsmith, 996 F.2d at 1163-64).*

> *...Moreover, a close temporal proximity existed between Farley's termination and his supervisors'*

35

*knowledge of the complaint. The charge was made May 19, 1995 and Farley was fired seven weeks later on July 10, 1995. We find this timeframe sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case. Farley v Nationwide Mutual Insurance 197 F.3d 1322 (11th Cir. 1999)*

**71.** Plaintiff satisfies the third prong because the protection in a participated activity is closely related to Plaintiff getting removed from his position for a second time. Plaintiff was reinstated on 5 Jan 2011 and was removed on 30 April 2011.

## FIFTH CAUSE OF ACTION – AGE DISCRIMINATION – DISPARATE TREATMENT & DISPARATE IMPACT

*In disparate-treatment cases brought under Title VII of the Civil Rights Act of 1964 or the Age Discrimination in Employment Act (ADEA), plaintiffs must show that their employers treated them less favorably because of the employee's membership in a protected class, such as race, gender, or age. The employee must prove through direct or circumstantial evidence that the discrimination was intentional. In contrast, a disparate-impact claim does not require proof of an intention to discriminate. Instead, showing that a facially neutral employment practice has a disproportionately adverse impact on a protected group states a prima facie case of unlawful disparate-impact discrimination. Disparate-Impact Claims under the ADEA, Vol. 28 No. 6 by Carla J. Rozycki, Emma J. Sullivan*

*Accordingly, to establish a prima facie case of age discrimination under a "failure-to-hire" theory, Lewis must show (1) that he belongs to the protected class, (2) that he applied for and was qualified for the job, (3) that despite his*

36

> qualifications he was rejected, and (4) that the
> employer either ultimately filled the position
> with someone sufficiently younger to permit an
> inference of age discrimination or continued to
> seek applicants from among those having Lewis'
> qualifications. *Barber v. CSX Distribution
> Services, 68 F.3d 694, 698 (3d Cir. 1995); see
> also Coe v. Yellow Freight System, 646 F.2d 444,
> 448-49 (10th Cir. 1981).*

72. Plaintiff alleges that ESD discriminated on the basis of age trying to either replace him with someone younger than 40 or to keep substitute teachers under 40 years of age. As stated in *Witcher v Sodexho, Inc.,* #07-21 6 (3rd Cir. 2007):

> In order to meet his initial burden of establishing
> a prima facie case of discrimination, appellant
> must present evidence that he "(1) was over forty
> years old at the time ,of the adverse employment
> decision; (2) is qualified for the position in
> question; (3) suffered from an adverse employment
> decision; and (4) that his employer replaced him
> with someone sufficiently younger to permit a
> reasonable injerence of age discrimination." Id at
> 184-85 (citing Potence v. Hazleton Area Sch. Dist.,
> 357 F3d 366, 370 (3rd Cir. 2004); Anderson v.
> Consolo Rai/ Corp., 297 F.3d 242, 249 (3d Cir.
> 2002)).

73. Using age discrimination under a disparate treatment theory, the first prong is satisfied by belonging to a protected class. The second prong is satisfied by being qualified for the job. The third prong is satisfied because he was removed from his position. The fourth prong is satisfied because either the Defendant filled the position with someone younger or continued to seek applicants.

**74.** Using the age discrimination under a disparate impact theory, Plaintiff alleges that the use of a performance evaluation allows the Defendant to remove minorities as substitute teachers and allows the Defendant to hire Caucasian substitutes and/or keep them employed with similar or worse evaluations.

## SIXTH CAUSE OF ACTION – VIOLATION OF 14TH AMENDMENT DUE PROCESS CLAUSE

> *To state a claim for a violation of procedural due process, a plaintiff must allege that: "(1) he was deprived [by state action] of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (internal quotation marks omitted))(quoting Hall v Easton Area School District, #10-7603 (USDC Eastern Dist PA (2012)*

### Investigation Not According To Regulation

> *This court has held in the past that an employer's failure to follow its own internal employment procedures can constitute evidence of pretext. Giacoletto v Amax Zinc Co., Inc., 954F.2d 424, 427 (7th Cir. 1992)*

> *Deviations from standard procedure without explanation or justification are sufficient to support an inference of pretext. Andre v Dept Of Defense, EEOC Appeal #01944562 Feb 22, 2002; Hoovey v Dept of HUD, EEOC Appeal #01973965 August 31, 2000; quoting Douglas v Dept of*

*Agriculture,* EEOC Appeal #0120072548, August 28, 2007)

**75.** Upon receiving the negative evaluations from only a few teachers, Howard did not do a through investigation enough to gather additional information. Howard did not compare the positive evaluations given by teachers. No investigation was conducted other than letting Plaintiff be terminated. Once Plaintiff was reinstated by Defendant and removed for the second time, Dr. Marshall failed to follow the regulations:

> *Lack of in-depth investigation before termination may support inference that employer's motives were not legitimate. Rademaker v Nebraska* 906 F.2d 1309, 1312 (8th Cir. 2000) (quoting *Gill v Reorganized School District R-6 Festus Missouri* 32 F.3d 376 (8th Cir. 1994) (Heaney, Circuit Judge, dissenting).

It appears that there are two avenues when filing a complaint:

## Avenue #1 – *Uniform Complaint Procedures* (UCP)

**76.** The first avenue to filing a complaint in outlined by *Uniform Complaint Procedures* (UCP) with comments by Plaintiff:

> *The Eastside Union School District shall investigate and seek to resolve complaints using policies and procedures known as the Uniform Complaint Procedures (UCP) adopted by our local board…Complaints alleging discrimination must be filed within six (6) months from the date the alleged discrimination occurred or the date the complainant first obtained knowledge of the facts of the alleged discrimination, unless the time for filing is extended by the superintendent or his or her designee.*

**Comments:** Plaintiff submitted his complaint within six months of the date of discrimination.

> *Complaints will be investigated and a written Decision or report will be sent to the complainant within sixty (60) days from the receipt of the complaint. This sixty (60) day time period may be extended by written agreement of the complainant. The LEA person responsible for investigating the complaint shall conduct and complete the investigation in accordance with sections 4680-4687 and in accordance with local procedures adopted under section 4621.*

77. **Comments:** A written decision or report was never sent to Plaintiff. It is important to note that **everything** that was done by Dr. Marshall or Mr. Howard was always verbal. For example, Dr. Marshall told me verbally that he visited all four principals and determined that it was in the best interests of ESD that Plaintiff is reinstated. Upon filing a complaint with the EEOC, Marshall instead stated that three of four principals did not want Plaintiff back at their schools. If that was true, why was Plaintiff reinstated?

### Avenue #2 - Administrative Regulation (AR) 4031

> *The following procedures shall be used when a district employee or job applicant has a complaint alleging that a specific action, policy, procedure or practice discriminates against him/her on any basis specified in the district's nondiscrimination policies…*
>
> *1. The complaint should be initiated promptly after a complainant knew, or should have known, of the alleged discrimination.*

**Comments:** Complaint was initiated promptly.

40

2. *All parties involved in allegations of discrimination shall be notified when a complaint is filed, when a complaint meeting or hearing is scheduled, and when a decision or ruling is made. The parties also shall be notified of their right to appeal the decision to the next level…*

**78.**  **Comments:** Plaintiff was reinstated. However, upon being reinstated, the Defendant removed Plaintiff from his position. The Defendant never informed Plaintiff of his right to appeal the second dismissal to the next level which is outlined below:

*Level III*

*If the complaint cannot be resolved at Level II, either party may present the complaint to the Superintendent or designee within 10 working days. The Superintendent or designee shall review the Level II investigation file, including the written complaint and all responses from district staff. The Superintendent or designee shall respond to the complaint in writing within 10 working days.*

*If the Superintendent or designee finds it necessary to conduct further investigation, he/she may designate up to 10 additional working days for such investigation and shall respond to the complaint in writing within 10 working days of completing the investigation.*

*Level IV*

*If the matter is not resolved at Level III, either party may file a written appeal to the Board within 10 working days after receiving the Level III response. The Superintendent or designee shall*

41

*provide the Board with all information presented at previous levels.*

*The Board shall grant the hearing request for the next regular Board meeting for which the matter can be placed on the agenda. Any complaint against a district employee shall be addressed in closed session in accordance with law. The Board shall render its decision within 10 working days.*

### Defendant's Motives Constitute Evidence Of Pretext

*The plaintiff must then prove that the employer's reasons for its employment decision were pretextual – that is, that they are false and that the real reason for the employment decision was discriminatory. Id. See Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995) Aljadir v Substitute Teacher Service (#02-464-GMS) USDC District Of Delaware (2002)*

79. Upon hiring Plaintiff back in 2002, he not only performed well in his position of substitute teacher, the Defendant kept hiring him back every year for eight years. Upon removing him, they rehired him and then removed him again from his position. Plaintiff has proved that he was performing satisfactorily. It is inconceivable that Plaintiff would perform unsatisfactorily with Defendant but perform satisfactorily at the other three school districts to which he is still employed. Defendant did not use anything in his favor to try to retain him.

80. For example, on 3 Feb 2011, Complainant was substituting for Ms Gonzalez (also at Eastside Elementary), weeks before Complainant substituted for Ms Shropshire on 7 Mar 2011. Ms

Gonzalez requested Plaintiff to come back to her class. Due to having another school to substitute at, Plaintiff could not be at Gonzalez's class. Plaintiff called her, and Ms Gonzalez stated that her students enjoyed him, and wanted to know if he was available for a long term position because she was going on maternity leave.

81. Plaintiff informed Dr. Marshall to contact Ms Gonzalez, but Dr. Marshall declined, saying that she was on maternity leave. Dr. Marshall never showed Plaintiff what Gonzalez wrote in her review. Why would Dr. Marshall reflect on what Ms Shropshire wrote and not review what Ms Gonzalez wrote weeks earlier? What was wrong with calling Ms Gonzalez instead of trying to remove Plaintiff from his position?

### Conclusion: Defendant's Actions Were Pretextual

*Evidence of pretext may include 'prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities; and the use of subjective criteria' Garrett v Hewlett-Packard Co., 305 f.3d 1210, 1217 (10th Cir. 2202)(quotations omitted) Jaramillo v Colorado Judicial Dept., 427 F.3d 1310 (10th Cir. 2005)*

82. Plaintiff has shown Defendant's actions were pretextual and used discriminatory methods to remove Plaintiff from his position. The Defendant acted "preciptiously" with a flimsy investigation as stated by *Gill v Reorganized School District R-*

43

6, *Festus Missouri* 32 F.3d 376 (8th Cir. 1994), Heaney, Senior Circuit Judge stated:

> *Superintendent Taylor acted precipitously and on a slim investigatory foundation, did not ask whether anyone had talked to the teacher about the accusation, and failed to consult Principal Richeson, who ordinarily handled such complaints, before terminating this highly regarded substitute teacher with longtime service to the school district. Viewing the evidence as a whole, a trier of fact could conclude that Taylor knew that the accused teacher was Gill and that she was African-American, and that he removed her from the substitute teacher list because of her race. See Rademaker v. Nebraska, 906 F.2d 1309, 1312 (8th Cir.1990) (lack of in-depth investigation before termination may support inference that employer's motives were not legitimate).*

83. Further evidence of pretext is what the 23 Mar 2012 letter from EEOC stated what Defendant said:

> *Respondent states as of October 25, 2010, three of the four District principals requested, on behalf of their teachers, that you not serve on their campuses. At that point, the Director of Human Resources contacted you to inform you that your services were no longer needed.*
>
> *Respondent states that based on a complaint you filed on November 1, 2010, Dr. Marshall, Director of Student Services, decided to allow you to return with the stipulation that you would not substitute at Columbia Elementary or for any of the teachers that had provided negative evaluations.*

84. The Defendant states that three out of four principals did not want Plaintiff on their campus based on responses from the

44

teachers. However, **after** Plaintiff filed a complaint, Dr. Marshall told Plaintiff that he talked to all four principals and that all wanted Plaintiff to come back. How did all the principals change their mind in a month's time?

85. Upon being reinstated, Plaintiff agreed not to substitute for any of the teachers that had given him poor evaluations. However, Plaintiff did not stipulate that he would not substitute at Columbia. In a statement to the EEOC, Defendant did not state why Plaintiff could not substitute at Columbia because **none** of the negative evaluations came from Columbia.

86. Additionally, it is odd that three out of four principals did not want Plaintiff on their campus on behalf of their teachers, but Plaintiff was not on their campuses a whole lot. For example, between the 2009 - 2010 and 2010 - 2011, Plaintiff substituted for the following schools:

| School | Number Of Times Substituted | |
|---|---|---|
| | School Years | |
| | 2009 - 2010 | 2010 - 2011 |
| Cole | 9 | 4 |
| Tierra Bonita | 2 | 1 |
| Columbia | 1 | 0 |
| Eastside Elem | 1 | 4 |

87. How is it possible for the teachers at these schools to not want Plaintiff when he hardly substituted at those schools? The only school that he substituted at the most was at Cole. Why would Plaintiff agree to not substitute at Columbia when he only was there one time? In fact, many of the principals were barely

45

into their jobs at this time period. For example, Mr. Pollack (Cole) and Ms Deal (Eastside) were principals that were hired during the 2009 – 2010 school year. Mr. Guerrero (Tierra Bonita) and Francisco Pinto (Columbia) were hired during the 2008 – 2009 school year. It is not possible to know about Plaintiff's performance for that short of a period as principal, especially (except for Cole) when Plaintiff hardly was their school.

## Relief Sought By Plaintiff

88. The conduct of Defendants caused injuries, damages and harm to Plaintiff including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses.

89. Plaintiff Vincent requests judgment and damages against all Defendants, jointly, severally and/or individually, as follows:

A. A declaratory judgment that Defendants have violated Plaintiff's right to be free from discrimination in the workplace pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991.

B. Enter an injunction ordering Defendant Coors to make Plaintiff whole with full back pay, benefits and reinstatement to a

46

position Plaintiff would have obtained in the absence of discrimination or, in the alternative, front pay.

> *An equitable remedy is 'to make whole relief' designed to restore the complainant as much as possible to the position he/she would have been absent discrimination Finlay v UPS EEOC Appeal #01942985 (April 28, 1997)(citing Albermarle Paper Co V Moody 422 U.S. 45 (1975)*

C. An award to Plaintiff for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential losses.

D. An award to Plaintiff for exemplary and/or punitive damages in an amount to be shown at trial.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. §1746; 18 U.S.C. § 1621.

Respectfully Submitted,

Vincent White
Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV12- 4622 RGK (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Vincent C. White<br>_____<br>Plaintiff<br><br>v.<br><br>Eastside Union School District<br>_____<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CV12 04622 RGK (JCx)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Eastside Union School District
45006 North 30th Street East
Lancaster, CA 93536

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  6/1/12

Signature of Clerk or Deputy Clerk

1181

FOR OFFICE USE ONLY

UNITED STATE DISTRICT COURT, CENTRAL DISTRICT CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

Vincent White

**DEFENDANTS**

Eastside Union School District

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

2603 West Oldfield Street
Lancaster CA 93535   661-942-4864

Attorneys (If Known)

45006 30th St. East
Lancaster, CA 93535
(661) 946-2813

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** 300,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

See Original Complaint for additional cause of action (42 USC Section 2000E)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☒ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV12 04622

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                  CIVIL COVER SHEET                                  Page 1 of 2

UNITED STAT   DISTRICT COURT, CENTRAL DISTRICT   CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date May 17, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |